In re James H. MITCHELL, III and Mary A. Mitchell, Debtors.

Xytest Corporation and George R. Berbeco, Plaintiffs,

v.

James H. Mitchell, III and Mary A. Mitchell, Defendants.

Bankruptcy No. 94–18204–JNF.
Adversary No. 00–1375.

United States Bankruptcy Court, D. Massachusetts.

Nov. 15, 2000.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Boston, MA, for plaintiffs.

James H. Mitchell, III, Mary A. Mitchell, defendants pro se.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the Plaintiffs' Motion to Dismiss, Abstain and/or Stay as to Defendants' Counterclaims and Third Party Complaint and to Strike Affirmative Defenses and Request for Hearing (the "Motion to Dismiss"). In view of the complete record before this Court, including the Debtors' Verified Opposition to Plaintiffs' Motion to Dismiss, the Court finds that oral argument and a hearing are unnecessary. Determination of the Motion requires consideration of the following:

1) the Complaint filed on July 31, 2000 against James H. Mitchell, III and Mary A. Mitchell (the "Debtors" or the "Mitchells") by Xytest Corporation ("Xytest") and George R. Berbeco ("Berbeco") (collectively the "Plaintiffs"), who obtained a judgment against the Debtors and Somerset Capital Corporation ("Somerset") in June of 1999 from the Superior Court in and for the County of San Mateo, California (the "California Judgment") and who seek a determination that the California Judgment is nondischargeable either because the claims arose postpetition or, alternatively, because the Debtors' obligations to them are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) or (a)(6);

2) the Answer to the Complaint filed by the Debtors;

3) the Fifty-three Affirmative Defenses asserted by the Debtors as follows:

(1) Failure to Join an Indispensable Party (the Debtors did not identify the indispensable party or parties); (2) Plaintiffs Are Not a Real Party in Interest (the Debtors assert the Plaintiffs lack standing to bring the instant adversary proceeding); (3) Plaintiffs are Not a Proper Party to Bring This Action; (4) Defendant Not Responsible for Third Party (the Debtors assert the Plaintiffs' claims are barred

because their injuries, if any, were caused by someone for whose conduct the Debtors were not legally responsible); (5) Failure to State a Claim; (6) Lack of Damages; (7) Failure to Mitigate Damages; (8) *de minimis non curat lex* (the Debtors maintain the Plaintiffs' claims are barred by this doctrine which according to Black's Law Dictionary, (5th ed.1979), means that "[t]he law does not care for, or take notice of, very small or trifling matters ...”); (9) Plaintiff's Negligence; (10) Contributory Negligence; (11) Res Judicata; (12) Collateral Estoppel and Issue Preclusion; (13) Waiver, Estoppel, Novation and Reaffirmation; (14) Breach by the Plaintiff [sic](the Debtors state that the Plaintiffs breached the contracts that are the subject of the present dispute); (15) Doctrine of Illegality; (16) Violation of Laws of Massachusetts (the Debtors state that the Plaintiffs' violations of Massachusetts and California law caused their injuries); (17) Unclean Hands; (18) Estopped by Own Acts; (19) Fraud Has Not Been Plead with Particularity; (20) Representations Were Made in Good Faith (the Debtors state that all their representations were made in good faith); (21) Plaintiff [sic] Misrepresented Several Facts (the Debtors did not indicate which facts were misrepresented); (22) Spoilation [sic] of Evidence (the Debtors do not identify what evidence was destroyed); (23) Time Barred (the Debtors assert the Plaintiffs are time barred from filing the complaint "at this late date"); (24) Statute of Limitations; (25) Laches; (26) Waiver of Rights; (27) Failure to Honor Obligations; (28) Failure to Provide Reasonable Opportunity to Cure; (29) Not [sic] Proximate Cause; (30) Failure to Perform all Conditions; (31) Set-off; (32) Unreasonable Delay by the Plaintiff [sic]; (33) Lack of Personal Jurisdiction (the Debtors state that the California Court lacked personal jurisdiction over them and Somerset); (34) Lack of Service (the Debtors state that they were never served with the First Amended Complaint in the California action); (35) Lack of Subject Matter Jurisdiction (the Debtors state that the California Superior Court lacked subject matter jurisdiction); (36) Forum Selection Clause (the Debtors state that the forum selection clause required the litigation to take place in Massachusetts, not California); (37) Violation of Decision of the Suffolk Superior Court (the Debtors do not state which decision was violated); (38) Violation of the Automatic Stay (the Debtors claim that the Plaintiffs and their affiliates violated the automatic stay and that any judgment entered is void as a matter of law); (39) Violation of the Discharge Injunction; (40) Failure to Plead Fraud and Concealment (the Debtors state that the Plaintiffs failed to plead fraud against Mary Mitchell); (41) Fraud Not Proven; (42) Lack of Reliance; (43) No Fiduciary Duty; (44) Claims are Based upon Discharged Claims (the Debtors state that the "Plaintiffs' claims are barred because their claims, if any, are based on claims of FET, Inc., Thermonics, Inc., George B. Kurtz, Paul J. Roberts and James C. Kufis, all of whom failed to file a non-dischargeability [sic] and whose claims are therefore forever extinguished"); (45) Failure to File Opposition (the Debtors state that Berbeco's claims are barred because he failed to oppose the Debtors' motion to amend their schedules); (46) Failure to Object to Characterization of Claims; (47) Judicial Estoppel (the Debtors state that the Plaintiffs made allegations in this case that are contrary to allegations made in the California action); (48) Punitive Damages (the Debtors state that the Plaintiffs' claims are barred because the punitive damage awarded specified in the Cali-

fornia Judgment [sic] is contrary to California law and violated the Fourteenth Amendment to the U.S. Constitution); (49) Failure to Seek Relief (the Debtors state that the Plaintiffs failed to seek the relief that they obtained in the California action); (50) California Judgment is Void; (51) California Judgment Was Obtained by Fraud; (52) Fraud upon the Court (the Debtors state that the California judgment was obtained by fraud upon the California court); (53) Judicial Estoppel (the Debtors state that the Plaintiffs' claims are barred because the Plaintiffs and their affiliates make [sic] contradictory factual allegations in the California Judgment which were essential to the California Judgment, and thus the Plaintiffs are now judicially estopped from making different factual allegations; [1]

4) the "Counterclaims and Third Party Complaint" filed by the Debtors and Somerset [2] against Xytest, Berbeco, and 13 other persons or entities, including Marilyn Mitchell, mother of James H. Mitchell, III, FET/Test, Inc. ("FET"), George B. Kurtz ("Kurtz"), president of FET, Thermonics, Inc. ("Thermonics"), James C. Kufis ("Kufis"), president of Thermonics, and Paul J. Roberts ("Roberts"), president of Xytest, pursuant to which the Mitchells and/or Somerset (the Mitchells and Somerset refer to themselves collectively as the "Somerset Group") assert the following claims:

> Count One: Violation of the Discharge Injunction I: The Somerset Group against Roberts, Kurtz, Kufis, the WP & M Group and the C & O Group; [3]

> Count Two: Violation of the Discharge Injunction II: The Somerset Group against Xytest, Berbeco, the WP & M Group, and the C & O Group;

> Count Three: Violation of the Automatic Stay (in Somerset Bankruptcy Case): The Somerset Group against Berbeco, Kurtz, Kufis, Roberts, the WP & M Group, and the C & O Group;

> Count Four: Declaratory Judgment I—Mary Mitchell Committed No Fraud: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

> Count Five: Declaratory Judgment II—James Mitchell Committed No Fraud: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

> Count Six: Declaratory Judgment III—There Was No Concealment: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

> Count Seven: Declaratory Judgment IV—The Punitive Damages Awarded Are Excessive: The Somerset Group against the Xytest Group;

> Count Eight: Declaratory Judgment V—The California Judgment Declaration Was Too Broad: The Somerset Group against the Xytest Group;

> Count Nine: Declaratory Judgment VI—Berbeco Owes a Fiduciary Duty to Somerset: The Somerset Group against Berbeco;

> Count Ten: Declaratory Judgment VII—Roberts Owes a Fiduciary Duty

---

1. In all instances, the Debtors' affirmative defenses are stated in one sentence and lack specificity.

2. Somerset was not named as a defendant and did not obtain leave from this Court to intervene in this adversary proceeding.

3. The WP & M Group refers to Willcox, Pirozzolo & McCarthy, a Massachusetts law firm, and its attorneys. The C & O Group refers to Cohen & Ostler, a California professional corporation, and its attorneys, including G. Kip Edwards and Andrew R. Kislik. These two firms represented Xytest Corporation, which sued the Mitchells and Somerset Capital Corporation, on behalf of itself and as successor to FET/TEST, Inc. and Thermonics Incorporated, James C. Kufis, George Kurtz, George R. Berbeco and Paul J. Roberts.

to Somerset: The Somerset Group against Roberts;

*Count Eleven:* Declaratory Judgment VIII—Deliberate Misrepresentation to the Court: The Somerset Group against Pirozzolo and Kislik;

*Count Twelve:* Declaratory Judgment IX—The Xytest Group's Claims Were Discharged in the Mitchell's Chapter 7 Bankruptcy: the Mitchells against the Complete Xytest Group;

*Count Thirteen:* Declaratory Judgment X—California Did Not Have Subject matter Jurisdiction: The Somerset Group against the Xytest Group;

*Count Fourteen:* Declaratory Judgment XI—California Did Not Have Personal Jurisdiction: The Mitchells against the Xytest Group;

*Count Fifteen:* Declaratory Judgment XII—Who Owns Somerset Capital Corporation: James Mitchell against Marilyn Mitchell;

*Count Sixteen:* Declaratory Judgment XIII—The Forum Selection Clause Is Valid and Enforceable: The Somerset Group against Xytest, Thermonics and Kufis;

*Count Seventeen:* Declaratory Judgment XIV—The Forum Selection Clause Is Valid and Enforceable: The Somerset Group against FET, Kurtz, Roberts and Berbeco;

*Count Eighteen:* Declaratory Judgment XV—FET Term Sheet is Valid and Enforceable: The Somerset Group against FET, Xytest and Kurtz;

*Count Nineteen:* Declaratory Judgment XVI—FET Non–Circumvention Agreement is Valid and Enforceable: The Somerset Group against FET, Xytest and Kurtz;

*Count Twenty:* Declaratory Judgment XVH—Thermonics Term Sheet is Valid and Enforceable: The Somerset Group against Thermonics, Xytest, and Kufis;

*County Twenty–One:* Declaratory Judgment XVIII—First Thermonics Non–Circumvention Agreement is Valid and Enforceable: The Somerset Group against Thermonics, Xytest, and Kufis;

*Count Twenty–Two:* Declaratory Judgment XIX—Second Thermonics Non–Circumvention Agreement is Valid and Enforceable: The Somerset Group against Thermonics, Xytest, and Kufis;

*Count Twenty–Three:* Declaratory Judgment XX—Roberts Non–Circumvention Agreement; The Somerset Group against Roberts and Xytest;

*Count Twenty–Four:* Injunctive Relief I—Injunction against Further Breaching the Forum Selection Clause: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

*Count Twenty–Five:* Injunctive Relief II—Injunction against Doing any Further Financial Transactions: The Somerset Group against the Xytest Group;

*Count Twenty–Six:* Breach of Contract I—Breach of the Forum Selection Clause I: The Somerset Group against Xytest, Thermonics and Kufis;

*Count Twenty–Seven:* Breach of Contract II—Breach of the Forum Selection Clause II: The Somerset Group against FET, Kurtz, Roberts and Berbeco;

*Count Twenty–Eight:* Breach of Contract III—Breach of the FET Term Sheet: The Somerset Group against FET, Xytest and Kurtz;

*Count Twenty–Nine:* Breach of Contract IV—Breach of the FET Non–Circumvention Agreement: The Somerset Group against FET, Xytest and Kurtz;

*Count Thirty:* Breach of Contract V—Breach of the Thermonics Term Sheet: The Somerset Group against Thermonics, Xytest, and Kufis;

*Count Thirty–One:* Breach of Contract VI—Breach of the First Thermonics Non–Circumvention Agreement: the Somerset Group against Thermonics, Xytest, and Kufis;

*Count Thirty–Two:* Breach of Contract VII—Breach of the Second Thermonics Non–Circumvention Agreement: The Somerset Group against Thermonics, Xytest, and Kufis;

*Count Thirty–Three:* Breach of Contract VIII—Breach of the Roberts Non–Circumvention Agreement: The Somerset Group against Roberts and Xytest;

*Count Thirty–Four:* Breach of Contract IX—Breach of Berbeco's Oral Contracts: The Somerset Group against Berbeco and Xytest;

*Count Thirty–Five:* Fraud and Deceit I: The Somerset Group against FET, Xytest and Kurtz;

*Count Thirty–Six:* Fraud and Deceit II: The Somerset Group against Thermonics, Xytest, and Kufis;

*Count Thirty–Seven:* Fraud and Deceit III: The Somerset Group against Berbeco and Xytest;

*Count Thirty–Eight:* Fraud and Deceit IV: The Somerset Group against Roberts and Xytest;

*Count Thirty–Nine:* Concealment I: The Somerset Group against Berbeco and Xytest;

*Count Forty:* Concealment II: The Somerset Group against Roberts and Xytest;

*Count Forty–One:* Abuse of Process and Malicious Prosecution I—Bringing Suit for Defamation: James and Mary Mitchell against Berbeco, the WP & M Group, and the C & O Group;

*Count Forty–Two:* Abuse of Process and Malicious Prosecution II—Bringing Suit for Concealment: James and Mary Mitchell against Berbeco, Xytest, the WP & M Group and the C & O Group;

*Count Forty–Three:* Abuse of Process and Malicious Prosecution III—Bringing Suit for Fraud When Not True: The Somerset Group against the Xytest Group, the WP & M Group, and the C & O Group;

*Count Forty–Four:* Abuse of Process and Malicious Prosecution IV—Bringing Suit in the Wrong Forum: The Somerset Group against the Xytest Group, the WP & M Group, and the C & O Group;

*Count Forty–Five:* Abuse of Process and Malicious Prosecution V—Including Mary Mitchell in the California Judgment: James and Mary Mitchell against the Xytest Group; the WP & M Group, and the C & O Group;

*Count Forty–Six:* Abuse of Process and Malicious Prosecution VI—Bringing Suit Against James Mitchell in the Nondischargeability Action: James and Mary Mitchell against Berbeco, Xytest and WP & M Group;

*Count Forty–Seven:* Abuse of Process and Malicious Prosecution VII—Bringing Suit against Mary Mitchell in the Nondischargeability Action: James and Mary Mitchell against Berbeco, Xytest and WP & M Group;

*Count Forty–Eight:* Misappropriation of Trade Secrets: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

*Count Forty–Nine:* Interference with Contractual Relations: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts, and the C & O Group;

*Count Fifty:* Interference with Prospective Economic Advantage: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts, and the C & O Group;

*Count Fifty–One:* Diversion of Corporate Opportunity: The Somerset Group against Berbeco and Roberts;

*Count Fifty–Two:* Unjust Enrichment: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

*Count Fifty–Three:* Quantum Meruit: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

*Count Fifty–Four:* Breach of Fiduciary Duty: Somerset against Berbeco and Roberts;

*Count Fifty–Five:* Intentional Infliction of Emotional Distress: James and Mary Mitchell against the Xytest Group, the WP & M Group, and the C & O Group;

*Count Fifty–Six:* Invasion of Privacy: James and Mary Mitchell against the Xytest Group, the WP & M Group, and the C & O Group;

*Count Fifty–Seven:* Violation of M.G.L. Chapter 93A: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts;

*Count Fifty–Eight:* Civil RICO: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts, the WP & M Group and the C & O Group; and

*Count Fifty–Nine:* Civil Conspiracy: The Somerset Group against Xytest, Berbeco, Kurtz, FET, Kufis, Thermonics, and Roberts, the WP & M Group and the C & O Group;[4] and

5) the Debtors' 60–page Verified Opposition to the Motion to Dismiss which contains references to 21 exhibits.

Pursuant to their Motion, the Plaintiffs seek dismissal of the Counterclaims under the *"Rooker Feldman* Doctrine," *see Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Alternatively, they request that this Court abstain, under either the mandatory or permissive abstention provisions of 28 U.S.C. § 1334(c), from determining the Counterclaims. Additionally, the Plaintiffs request that Count Fifteen be severed, that Counts One and Two be dismissed because the Plaintiffs claims arose post-petition, that Count Three be dismissed because the issue of a violation of the automatic stay was decided in Somerset's bankruptcy case, and that Count Fifty–Three be dismissed because it has been asserted in the Middlesex Action.

## II. FACTS

The material facts necessary to decide the Plaintiffs' Motion to Dismiss, which motion the Court shall treat as a Motion for Summary Judgment because the parties included material extraneous to the pleadings, cannot be disputed. Most of the facts are contained in the records of the Debtors' Chapter 7 case, and the Court takes judicial notice of the contents of that file. *See In re Nail,* 195 B.R. 922, 924 n. 3

---

4. The Somerset Group filed and later withdrew the following:

1) Somerset Group's First Motion for Partial Summary Judgment—Debtors' Verified Motion fo [sic] Summary Judgment on All Counts of the Plaintiffs' Complaint and for Summary Judgment on Count 12 of the Somerset Group's Counterclaim and Third Party Complaint;

2) Somerset Group's Second Motion for Partial Summary Judgment—Somerset Group's Verified Motion for Partial Summary Judgment on Counts II and III of the Complaint and Count 4 of the Somerset Group's Counterclaim and Third Party Complaint;

3) Somerset Group's Third Motion for Partial Summary Judgment—Somerset Group's Motion for Partial Summary Judgment on Count 6 of their Counterclaim and Third Party Complaint; and

4) Somerset Group's Fourth Motion for Partial Summary Judgment—Somerset Group's Verified Motion for Partial Summary Judgment on Count 7 of Their Counterclaim and Third Party Complaint.

In response, the Plaintiffs filed 1) Plaintiff's Opposition to Defendants' First Summary Judgment Motion; and 2) Plaintiff's Opposition to Defendants' Second, Third and Fourth Summary Judgment Motions. The Plaintiffs, however, did not object to the Debtors' withdrawal of the summary judgment motions.

(Bankr.N.D.Ala.1996); *In re Bestway Products, Inc.,* 151 B.R. 530, 540 (Bankr. E.D.Cal.1993), *aff'd,* 165 B.R. 339 (9th Cir. BAP 1994). Moreover, as is evident from their pleadings, the Debtors do not dispute the existence of the California Judgment against them and Somerset. Only the legal significance of the undisputed facts is at issue. An involuntary petition was filed against the Debtors by Marilyn Mitchell, James Mitchell's mother, on December 30, 1994. On the involuntary petition, Marilyn Mitchell indicated that her address was 176 Ashland Avenue, Los Angeles, CA 90049. The Debtors did not contest the involuntary petition, and the Court entered an order for relief on March 1, 1995. Approximately two and one half months later, on May 19, 1995, the Debtors filed Schedules and a Statement of Financial Affairs. On Schedule B—Personal Property, the Debtors indicated that they owned "no stocks in any incorporated or unincorporated business that is not defunct." On Schedule F—Creditors Holding Unsecured NonPriority Claims, the Debtors did not list the Plaintiffs or any of the other parties they have identified in their Counterclaim and Third Party Complaint. In their Statement of Financial Affairs, in response to Question 14, "List all property owned by another person that the debtor holds or controls," the Debtors listed the following:

Somerset Capital
176 Ashland Avenue
Los Angeles, CA 90049
Miscellaneous office equipment, personal computers and peripherals, filing cabinets, office furniture, books.
Total value: uncertain

On February 2, 1996, this Court entered an order discharging the Debtors. On January 17, 1997, the Debtors filed amended Schedules and an Amended Statement of Financial Affairs. The Debtors did not list an ownership interest in Somerset on their Amended Schedule B, and they did not list any of the Plaintiffs or other parties identified in their Counterclaim and Third Party Complaint on Amended Schedule F. In their Amended Statement of Financial Affairs, the Debtors indicated the following in response to Question 14:

Somerset Capital
176 Ashland Avenue
Los Angeles, CA 90049

Miscellaneous office equipment, personal computers and peripherals, filing cabinets, office furniture, books, *and various intellectual property and tools (including, but not limited to, computer files).*[5]

Total value: uncertain

(emphasis supplied).

On December 3, 1997, Stephen Gray, the Chapter 7 Trustee, filed a Report of No Distribution. Approximately one month later, the Chapter 7 case was closed.

On April 28, 1999, the Chapter 7 Trustee moved to reopen the Debtors' Chapter 7 case. This Court granted the motion on May 13, 1999.

On June 15, 1999, the Honorable Thomas McGinn Smith of the Superior Court of the State of California in and for the County of San Mateo entered a form of judgment in Case No. 401860 captioned *Xytest Corporation, on behalf of itself and as successor to FET/Test, Inc. and Thermonics Incorporated, James C. Kufis, George Kurtz, George R. Berbeco and Paul J. Roberts v. Somerset Capital Corporation, James H. Mitchell, III, and Mary A. Mitchell.* The Judgment provided the following:

This matter having come before the Court, the evidence having been presented, the parties having been heard and the matter having been submitted to the Court,

---

**5.** The italicized language was added, amending the previous Statement of Financial Affairs.

IT IS HEREBY ADJUDGED, ORDERED, DECREED AND DECLARED by this Court that:

1. Having found for the plaintiffs that the fraud of defendants, both in the inducement and actual, so permeates each and every one of the transactions in issue in this action, the FET/Test Term Sheet (dated February 16, 1995), the FET/Test Confidentiality Letter (dated August 29, 1995), and Thermonics Confidentiality Letter (dated March 10, 1997) (the "Purported Agreements") are and each one is hereby declared to be void and to be unenforceable and to have no legal force or effect; and further, having so found for the plaintiffs, the defendants have no claim or cause of action against plaintiffs arising out of the Purported Agreements or the aforesaid transactions (Civil Code §§ 1572, 1573); and further, having so found for the plaintiffs, there would be no purpose in reforming or rescinding the Purported Agreements as said agreements are void and unenforceable; and further,

2. Having found for the plaintiffs as described above, plaintiffs did not breach and have not breached any duty to the defendants with respect to the Xytest merger on August 26, 1997, or the transactions leading to said merger, defendants have no right or interest in ownership or management of Xytest, and said merger and the transactions leading to said merger are not invalid or voidable as a result of the Purported Agreements or the transactions in issue; and further,

3. Having found for the defendants with regard to a fifth cause of action, for defamation, said count is dismissed; and further,

4. Having found for the plaintiffs as described above, damages are awarded in the sum of $25,000, plus punitive damages based upon the fraud of the defendants in the sum of $250,000, plus costs incurred.

The Debtors and Somerset appealed the judgment.

On March 29, 2000, the successor Chapter 7 Trustee, David B. Madoff filed, in the Debtors' reopened Chapter 7 case, a Trustee's Notice of Intention to Abandon property pursuant to which he proposed to abandon the following:

all of the estate's interest, if any, in (a) Somerset Capital Corporation; (b) any and all claims or litigation pending in California, including an action commenced by Xytest Corporation against, among others, the Debtors in San Mateo, California Superior Court, now on appeal, captioned *Xytest Corporation et al. v. Somerset Capital Corporation*, Superior Court No. 401860, Appeal No. A088192; (c) any and all claims or litigation pending in Massachusetts, including an action in Suffolk Superior Court, captioned *Somerset Capital Corporation et al. v. Gorge R. Berbeco et al.*, Suffolk Superior Court C.A. 97–4761–C, and an action in Middlesex Superior Court captioned, *James H. Mitchell, III et al. v. Jack R. Pirozzolo, et al.*, Middlesex Superior Court Civil Action No. 99–5513–E. (now consolidated in Suffolk).

As reason for the abandonment, the Trustee stated the following:

A judgment has been entered against the Debtors and Somerset in the California Action in an amount in excess of $275,000. Although the Debtors have appealed from that judgment, and assert counterclaims against the plaintiffs, the Trustee determined that the causes of action are of inconsequential value to the estate. Further, Somerset Capital appears to have no value, especially given the judgment against it.

On April 3, 2000, the Debtors filed, among other things, Debtors' Verified Motion to Amend Schedules and Schedules B and F and an addendum to the schedules. The Debtors added the following persons or entities as creditors on their Second Amended Schedule F: Xytest Corporation, FET/Test, Inc., Thermonics, Incorporated,

George R. Berbeco, Paul J. Roberts, George H. Kurtz, and James C. Kufis. With respect to their Amendment to Schedule B, the Debtors stated the following: "James H. Mitchell, III asserts he owns all the common stock of Somerset Capital Corporation, a Delaware Corporation. The issue of who owns Somerset has not been determined by this Court."

On May 30, 2000, this Court entered an order granting the Debtors' Verified Motion to Amend Schedules, stating "[t]he allowance of the Motion does not constitute a determination that the creditors known as the Xytest Group, as identified in the Motion, have allowable or dischargeable claims against the Debtors." On the same day, the Court issued a "Notice to Added Creditors," advising them that any "Complaint Objecting To The Discharge Of The Debtor And/Or To Have A Debt Declared Non–Dischargeable, Must Be Received By The Bankruptcy Clerk's Office On Or Before July 31, 2000 By 4:30 P.M."

On July 31, 2000, the Plaintiffs filed a Complaint against the Debtors to which they attached a copy of the California Judgment and a copy of the First Amended Complaint filed in the California action, as well as a copy of the Schedule F filed by the Debtors on April 3, 2000. The Plaintiffs' Complaint contains four counts: Count I—Nondischargeability under 11 U.S.C. § 727(b) [sic]; Count II—Nondischargeability under 11 U.S.C. § 523(a)(2); Count III—Nondischargeability under 11 U.S.C. § 523(a)(6); and Count IV—Misuse of the Bankruptcy Proceedings. Although the Plaintiffs formulated counts under 11 U.S.C. §§ 523 and 727, it is clear from their requests for relief that they are seeking a declaration that the California Judgment is not a prepetition debt subject to discharge. Specifically, the Plaintiffs request the Court to 1) declare that the claims of plaintiffs against the Mitchells are not claims against the Bankruptcy estate; 2) declare that the claims of plaintiffs against the Mitchells are post-petition claims; 3) declare that the California Judgment entered in favor of plaintiffs against the Mitchells is not discharged and is not subject to any discharge; and 4) declare that the claims of plaintiffs against the Mitchells are not discharged and are not dischargeable.

In response to the Complaint, the Mitchells filed 53 affirmative defenses, and various counterclaims and third party claims. Additionally, Somerset intervened as a third party plaintiff, without leave of Court, and filed numerous claims against the Plaintiffs and others.

## III. DISCUSSION

### A. The Counterclaims and Third Party Complaint

1. Counts Three through Eleven, Thirteen, Fourteen, Sixteen through Forty–Five, and Forty–Eight through Fifty–Nine—Lack of Subject Matter Jurisdiction Applicable Law

#### a. Applicable Law

##### (i) The Rooker Feldman Doctrine

The United States Bankruptcy Court for the District of Puerto Rico, in *Halvorsen v. Mendez (In re Mendez)*, 246 B.R. 141 (Bankr.D.P.R.2000), succinctly explained the *Rooker Feldman* Doctrine as follows:

> The *Rooker–Feldman* doctrine traces its origins to two U.S. Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine recognizes that U.S. district courts are courts of original, not appellate jurisdiction. Thus, "lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions". *Wang v. New Hampshire Board of Registration in Medicine*, 55 F.3d 698, 703 (1st Cir. 1995); *Hill v. Town of Conway*, 193 F.3d 33 (1st Cir.1999).

'Even if jurisdiction would otherwise exist under 28 U.S.C. § 1334 over a given dispute, a bankruptcy court may not exercise jurisdiction over that dispute if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment.' Bluebond, Sheri, Recent Developments in Jurisdiction, Venue, Abstention, Remand, Removal, Withdrawal of the Reference, Jury Trials and Appeals, 767 PLI/Comm. 9 (1998).

In *Snider v. City of Excelsior Springs, Missouri*, 154 F.3d 809, 811–12 (8th Cir.1998), the court explained:

> *Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding. [cit. omitted] Deciding whether *Rooker–Feldman* bars the plaintiffs' federal suit therefore requires that we determine what the state court held and whether the relief that the plaintiffs requested in their federal action would void the state court's decision or would require us to determine that the decision was **wrong**.

(Emphasis added.)

246 B.R. at 145–46.

#### (ii) Jurisdiction

The jurisdiction of the Bankruptcy Court is found at 28 U.S.C. §§ 157 and 1334. The extent of this Court's jurisdiction is primarily dependent on whether a proceeding is determined to be a "core" or a "non-core" matter. Thus, bankruptcy judges may hear and determine all cases and all core proceedings either arising under title 11 or arising in cases under title 11 and they may enter appropriate orders and judgments. Section 157(b)(2)(A)–(O) contains a non-exhaustive list of core matters. *See* 11 U.S.C. § 157(b)(2)(A)–(O).

■ If a matter is non-core, it may be "related to" a bankruptcy case. A bankruptcy judge hearing such a proceeding must submit proposed findings of fact and conclusions of law to the district court, unless the district court with the assent of all parties refers the "related to" proceeding to a bankruptcy judge. *See* 28 U.S.C. § 157(c)(1)–(2). The test for determining whether a matter is "related to" a bankruptcy case is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Celotex v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). *See also In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir.1991).

#### b. Analysis

Upon consideration of the foregoing legal principles, the Court hereby dismisses Counts Three through Eleven, Counts Thirteen and Fourteen, Counts Sixteen through Forty–Five and Counts Forty–Eight through Fifty–Nine of the Counterclaims and Third Party Complaint. Not only are these counts barred by the *Rooker–Feldman* doctrine, this Court lacks jurisdiction over them.

■ A review of the Debtors' claims, the First Amended Complaint filed in the California Superior Court and the California judgment, reveals that the Debtors and Somerset, through the Counts identified above, seek to reverse or even void the judgment of the California Superior Court, and to modify the findings upon which it was based, thus implicating the *Rooker–Feldman* Doctrine. Indeed, the Debtors and Somerset seek a retrial of the California action, thereby avoiding the appeals process.

■ Even assuming arguendo that this Court were to determine that the *Rooker–Feldman* Doctrine is inapplicable, the Counts identified above must be dismissed. This is because the Chapter 7 Trustee has abandoned the Debtors' claims arising out of the Xytest litigation, as well as any interests the Debtors may have in Somer-

set. Accordingly, resolution of the Somerset Group's claims against the so-called total Xytest Group, as defined by the Debtors and Somerset, would have *no effect whatsoever* on the administration of this Chapter 7 case.[6] Accordingly, the Counts set forth above are neither "core" nor "related to" the Debtors' Chapter 7 bankruptcy case, and the Court lacks jurisdiction over these Counts.

### 2. Count Fifteen–Judicial Estoppel

■ With respect to Count Fifteen, the Court hereby dismisses that Count on grounds that the Debtors are judicially estopped from asserting an ownership interest in Somerset. *See Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570 (1st Cir.), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993). In *Payless*, Payless Wholesale Distributors, Inc., a corporation which had been a Chapter 11 debtor and received a discharge in its Chapter 11 case, sued Alberto Culver (P.R.), Inc. seeking damages in excess of $5 million. During its Chapter 11 case, Payless did not "even vaguely" refer to its claims against Alberto Culver, yet it brazenly asserted in the subsequent action that the statute of limitations was tolled by the pendency of its Chapter 11 case. The United States Court of Appeals for the First Circuit observed the following:

The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively. *See, e.g., In re H.R.P. Auto Center, Inc.*, 130 B.R. 247, 253–54 (Bankr.N.D.Ohio 1991) (collecting cases). Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis. This may not be strictly equitable estoppel, as the court observed. Indeed, defendants may have a windfall. However, it is an unacceptable abuse of judicial proceedings.

989 F.2d at 571.

In the instant case, the Debtors filed Schedules on May 19, 1995 and amended Schedules on January 17, 1997. After the Trustee filed a notice of his intention to abandon his interest in Somerset, the Debtors' filed an amended Schedule B in which James Mitchell, III purported to assert an interest in its stock, indicating that the issue of the ownership of Somerset has not been resolved. The Court disagrees. The Debtors filed Schedules under pains and penalties of perjury in which they indicated that they did not own Somerset. They foreclosed the issue of the prepetition ownership of Somerset and are now judicially estopped from raising the issue now. The Debtors represented that no ownership existed; under *Payless*, they can not now resurrect the issue of ownership and obtain any form of relief on an opposite contention.

### 3. Count Three–Intervention

■ As further grounds for dismissal of the Counterclaims and Third Party claims identified above, Somerset failed to obtain leave of Court to intervene as a third party plaintiff.

A party that desires to intervene in a civil action under Rule 24(a)(2) must satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a

---

**6.** The claims of the so-called Somerset Group against the so-called Xytest Defendants do not concern the administration of the bankruptcy estate because the Chapter 7 Trustee has abandoned the estate's interest in the litigation. Moreover, the Somerset Group lacks standing to bring the claims on behalf of the Debtors' estate. Additionally, because the Trustee has abandoned any interest the estate may have in the litigation, the Somerset Group's claims cannot affect the liquidation of the assets of the estate.

demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest. *See Conservation Law Found. v. Mosbacher,* 966 F.2d 39, 41 (1st Cir.1992). An applicant for intervention as of right must run the table and fulfill all four of these preconditions. The failure to satisfy any one of them dooms intervention. *See Travelers Indem., Co. v. Dingwell,* 884 F.2d 629, 637 (1st Cir.1989).

*Public Serv. Co. of New Hampshire v. Patch,* 136 F.3d 197, 207 (1st Cir.1998).[7] Neither Somerset nor the Debtors satisfied any of the criteria identified by the United States Court of Appeals for the First Circuit. Accordingly, dismissal is warranted on that independent ground alone.

The failure to obtain leave to intervene is particularly egregious with respect to Count Three pursuant to which the Debtors and Somerset ask this Court to determine that the so-called Xytest Group violated the automatic stay in Somerset's Chapter 7 bankruptcy case. Such a determination is not pertinent to the instant case. If such a stay violation occurred, it was incumbent upon Somerset to obtain whatever relief it had available to it in its Chapter 7 case.[8]

### B. *The Affirmative Defenses*

Federal Rule of Bankruptcy Procedure 9011 provides the following:

**(b) REPRESENTATIONS TO THE COURT.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attor- ney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

\*　　\*　　\*　　\*　　\*　　\*

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated....

(B) On court's initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not

---

7. Fed.R.Civ.P. 24 is made applicable to this adversary proceeding by Fed.R.Bank.P. 7024.

8. The Court observes that as a result of its ruling Counts One, Two, Twelve, Forty–Six and Forty–Seven remain.

violated subdivision (b) with respect thereto.

Fed.R.Bankr.P. 9011.

It appears to this Court that the affirmative defenses stated by the Debtors, except those numbered 38, 39 and 44, may violate Fed.R.Bankr.P. 9011.

## IV. CONCLUSION

The Court shall enter an order requiring the Debtors to show cause why they should not be sanctioned for interposing frivolous affirmative defenses for the sole purpose of causing unnecessary delay and increasing the cost of the litigation. The order shall require the Debtors to file a written response, which response shall not exceed 20 pages of double spaced text, by December 1, 2000 and to appear on December 13, 2000 at 10:30 a.m. in Courtroom 1.

In addition, the Court shall enter and order granting in part and denying in part the Motion to Dismiss. The Court shall enter an order dismissing Counts Three through Eleven, Counts Thirteen through Forty–Five, and Forty–Eight and Forty–Nine.