**In re Lenard LIMIEUX, Debtor.**

**Scott Gomes, Plaintiff,**

v.

**Lenard Limieux, Defendant.**

**Bankruptcy No. 02–47369.
Adversary No. 03–4047.**

United States Bankruptcy Court,
D. Massachusetts.

March 30, 2004.

Alfred P. Farese, Jr., Everett, MA, for debtor.

Thomas P. Smith, Caffrey & Smith, P.C., Lawrence, MA, for defendant.

### MEMORANDUM OF DECISION

Henry J. BOROFF, Bankruptcy Judge.

Before the Court is the "Plaintiff's Motion For Summary Judgment" (the "Motion"). Scott Gomes ("Gomes"), a state court judgment creditor, seeks a determination that his claim for damages against Lenard Limieux (the "Debtor") arising from the Debtor's assault and battery upon him is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] The Debtor responds that the claim is dischargeable because: 1) his culpability, established in the state court action, does not rise to the "wilful and malicious" level required under § 523(a)(6); and 2) the exclusivity provisions of the Massachusetts Workers' Compensation Act[2] bar the recovery of such damages for intentional torts occurring in the course of employment.

---

**1.** 11 U.S.C. § 523(a)(6) reads in relevant part: "(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (6) for willful and malicious injury by the debtor to another entity ...." 11 U.S.C. § 523(a)(6) (2003).

**2.** Mass. Gen. Laws ch. 152, § 24 (2003).

## I. *FACTS AND TRAVEL OF THE CASE*

The facts set forth below are not in material dispute.

On December 10, 2002, the Debtor filed for relief in this Court under Chapter 7 of the Bankruptcy Code (the "Code"). On Schedule "F" of his petition, he listed Gomes as an unsecured, non-priority creditor holding a claim of $12,000.00 (the "Claim"). The Claim resulted from a Special Jury Verdict (the "Verdict"), entered in November 2002 in the Massachusetts Superior Court (the "State Court"), concluding that the Debtor had committed an assault and battery on Gomes. The special questions presented to the State Court jury and the answers thereto were as follows:

QUESTION: Did Leonard Lemeiux [sic] commit an assault and battery on Scott Gomes?

ANSWER: Yes.

QUESTION: What is the total amount of damages that will fairly and reasonably compensate Scott Gomes for injuries suffered as a result of the assault and battery, apart from wages?

ANSWER: $2,352.76.

QUESTION: Did Scott Gomes suffer a loss of wages as a result of the assault and battery?

ANSWER: Yes.

QUESTION: If so, what is the total amount of lost wages suffered by Scott Gomes as a result of the assault and battery?

ANSWER: $6,000.00.

"Special Jury Verdict," Massachusetts Superior Court, Essex County, Docket No. 00–700C, November 18, 2002. Subsequently, the State Court issued its Judgment on Jury Verdict (the "Judgment") for Gomes and against the Debtor in the sum of $10,947.55, including interest and costs. "Judgment on Jury Verdict," Massachusetts Superior Court, Essex County, Docket No. 00–700C, November 26, 2002.

During the State Court trial, Gomes presented evidence that the Debtor, his co-worker, physically attacked him during work hours at their place of employment. Gomes sustained physical injuries requiring hospitalization. In his State Court complaint, Gomes alleged that "[the Debtor's] physical attack and verbal abuse of Gomes was not within the course of his employment or in furtherance of the employer's interest." "Complaint and Jury Demand," filed in Massachusetts Superior Court, Essex County, April 18, 2000, Docket No. 00–700C (the "State Complaint").[3] In both a Motion to Dismiss and a Motion for Directed Verdict, the Debtor argued that the Massachusetts Worker's Compensation Act (the "Act") barred Gomes' recovery from him for damages because the assault was within the course of employment. Mass. Gen. Laws ch. 152, § 24 (2003).[4] Both motions were denied, and the Judgment became final.

---

3. In Count III of the State Complaint, Gomes named his employer, Ever Ready Trucking, Inc., and two of its principals as co-defendants, liable to Gomes for wrongful termination. That Count and those defendants were subsequently dismissed from the State Court action.

4. Mass. General Laws ch. 152, § 24 acts as a waiver under the Worker's Compensation Act of any covered worker's common law rights against his/her employer or co-workers for injuries sustained in furtherance of the employer's interests or in the course of employment, so-called compensable injuries. *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 664 N.E.2d 815 (1996); cf. *O'Connell v. Chasdi*, 400 Mass. 686, 690, 511 N.E.2d 349, 351 (1987) (holding that where a co-worker "commits an intentional tort not related to the interests of the employer . . . the policies behind the act would not be served by immunizing the coemployee").

On March 6, 2003, Gomes filed a complaint in this Court seeking to determine the Claim nondischargeable under 11 U.S.C. § 523(a)(6). Gomes then filed the instant Motion, which the Debtor opposed for the reasons set forth below. After a hearing on the Motion and the opposition thereto, the matter was taken under advisement.

## II. *POSITIONS OF THE PARTIES*

Gomes argues that the Claim is nondischargeable under 11 U.S.C. § 523(a)(6) because it is based upon injuries the Debtor intentionally inflicted upon him. In support, he points to the State Court Judgment holding that: 1) the Debtor committed the intentional tort of assault and battery against him; and 2) Gomes should recover damages against the Debtor for his injuries. Gomes argues that, under Massachusetts law, the Verdict on assault and battery necessitated a finding that the Defendant used intentional and non-justified force against him. Given such a finding, Gomes argues that the Verdict meets the "willful and malicious" standard under § 523(a)(6) precluding discharge of the Claim. Furthermore, since the Verdict required a finding that the Debtor committed a "wrongful act, done intentionally, without just cause or excuse," Gomes contends that the Debtor is barred by collateral estoppel from re-litigating the dischargeability of the Claim in this Court. "Plaintiff's Memorandum In Support Of His Motion For Summary Judgment," p. 4 (quoting *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 48 L.Ed. 754 (1904)). Similarly, Gomes asserts that, because the issue of whether the Act bars Gomes' common law recovery of damages against the Debtor was fully litigated in State Court, collateral estoppel precludes the Debtor from re-litigating that issue before this Court. *Id.* at 5. Alternatively, he argues that the Act does not bar a worker's recovery against a co-worker for intentional torts.

The Debtor responds that, since the State Court jury was never asked to consider whether the Debtor's actions were "willful and malicious," the Judgment provides no basis for determining the Claim to be nondischargeable under § 523(a)(6). Instead, the Debtor asserts that the Judgment was solely based upon evidence that Gomes' injuries were the result of a "harmful or offensive contact." In fact, the Debtor maintains that courts interpreting the "willful and malicious" standard have required proof of a debtor's specific intent to harm in order for a creditor to make out a case for nondischargeability under § 523(a)(6).

Moreover, the Debtor contends that since some of the Claim represented lost wages and medical bills, Gomes is barred from recovering same by the Act.[5] In support, the Debtor cites case law holding the Act to be a bar to the recovery of common law damages by a worker injured by a co-worker's intentional torts committed within the course of employment. The Debtor argues that, if this Court holds that the entire Claim is non-dischargeable under § 523(a)(6), it would in effect be circumventing the Act by permitting Gomes' recovery of common law damages against him.

## III. *DISCUSSION*

### A. *Standard for Summary Judgment.*

Summary judgment is appropriate if all of the "pleadings, depositions, answers to

[5]. Gomes never filed a claim under the Act for his injuries. The Debtor states the amount of the Claim representing lost wages and medical bills to be approximately $6,352.76. At the hearing, Debtor's counsel conceded that the Claim included about $2,000.00 in damages the Act would not cover, namely Gomes' pain and suffering.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) made applicable to this proceeding by Fed. R. Bankr.P. 7056. This means that "summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994) (citing *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 488 (1st Cir.1992)). The Court must view the record in the light most favorable to the party opposing summary judgment and make all reasonable inferences in its favor. *Newport Plaza Assoc. L.P. v. Durfee Attleboro Bank*, 985 F.2d 640, 643 (1st Cir.1993); *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 431 (1st Cir.1992).

### *B. Standards of res judicata.*

 It is well established that a party may invoke collateral estoppel regarding a previously litigated matter in a § 523(a) dischargeability context in order to minimize additional litigation in Bankruptcy Court. *Grogan v. Garner*, 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Baylis*, 217 F.3d 66 (1st Cir.2000). Under the Full Faith and Credit Act, 28 U.S.C. § 1738,[6] the preclusive effect of a state court judgment in a subsequent federal court proceeding is determined by the preclusion law of the state in which the judgment issued. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir.1992) (per curiam); *U.S. v. One Parcel of Real Property*, 900 F.2d 470, 473 (1st Cir.1990); *In re Leroux*, 216 B.R. 459, 467 (Bankr. D.Mass.1997); *see also Restatement (Second) of Judgments*, § 27. Preponderance of the evidence is the standard of proof under § 523(a). *Grogan*, 498 U.S. at 291, 111 S.Ct. 654. The standard of proof in a civil action in Massachusetts is likewise preponderance of the evidence. *Jordan v. Clerk of Westfield Div. of Dist. Court Dept.*, 425 Mass. 1016, 1017, 681 N.E.2d 276 (1997).

 In Massachusetts, under the rubric of "res judicata," the two separate and distinct concepts of claim preclusion (formerly, "merger" or "bar") and issue preclusion (formerly, collateral estoppel) operate to facilitate judicial economy and provide finality to judgments. *Bagley v. Moxley*, 407 Mass. 633, 636–37, 555 N.E.2d 229, 232–33 (1990) (citing *Heacock v. Heacock*, 402 Mass. 21, 520 N.E.2d 151 (1988)). The doctrine of claim preclusion "makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation on all matters that were or should have been adjudicated in the action." *Heacock v. Heacock*, 402 Mass. 21, 23, 520 N.E.2d 151, 152 (1988). Three elements must obtain to invoke claim preclusion: "1) identity or privity of the parties to the present and prior actions; 2) identity of the cause of action; and 3) a prior final judgment on the merits." *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 36 Mass.App.Ct. 386, 391, 631 N.E.2d 1021, 1024 (1994). Alternately, the doctrine of issue preclusion prevents "relitigation of an issue determined in an earlier action where the same issue arises

---

**6.** 28 U.S.C. § 1738 provides in pertinent part that judicial "proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ...." 28 U.S.C. § 1738 (2003).

in a later action, based on a different claim, between the same parties or their privies." *Heacock v. Heacock,* 402 Mass. 21, 23 n. 2, 520 N.E.2d 151, 152 n. 2 (1988). Four elements must obtain to invoke issue preclusion: 1) a final judgment on the merits issued in the prior action; 2) the issue for which preclusion is sought was actually litigated and essential to the judgment in the prior action; 3) the party against whom preclusion is sought was a party (or in privity to a party) in the prior action; and 4) the issue for which preclusion is sought is the same in both the prior and present actions. *TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc.,* 48 Mass.App.Ct. 1, 5, 716 N.E.2d 1044, 1050 (1999).

### C. Willful and malicious under Section 523(a)(6).

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6) (2003). The Code does not define "willful and malicious." *In re Sullivan,* 198 B.R. 417, 419 (Bankr.D.Mass. 1996). In *Tinker v. Colwell,* the United States Supreme Court, interpreting the scienter requirement of § 17 of the Bankruptcy Act, the predecessor to § 523(a)(6), held that willful and malicious injuries connoted acts done intentionally and without justification or excuse. *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). When Congress enacted the Bankruptcy Code in 1978, it partly overruled *Tinker* stating in legislative history that:

"'wilful' means deliberate or intentional. To the extent that *Tinker v. Colwell,* 139 U.S. 472 (1902)[sic], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled." S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 6320. In *Kawaauhau v. Geiger,* the Supreme Court further refined the definition of the term "willful" in § 523(a)(6) when it held that "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in the original). In other words, an act falls under § 523(a)(6) if it was committed with "the actual intent to cause injury." *Id.*

While *Geiger* defined "willful" under § 523(a)(6) at length, arguably, it did not provide discrete illumination for "malicious," the second modifier of injury in the section. *McAlister v. Slosberg (In re Slosberg),* 225 B.R. 9, 16 (Bankr.D.Maine 1998) (describing the *Geiger* decision as "silent regarding the meaning of 'malicious,' although its redefinition of 'willful' incorporates much (at first blush some might say all) of what 'malicious' once meant in § 523(a)(6)'s context"); *see Read & Lundy, Inc. v. Brier (In re Brier),* 274 B.R. 37, 43 (Bankr.D.Mass.2002) (quoting heavily from the portions of *Slosberg* that describe *Geiger* as "silent" on malicious).[7] While

---

7. The *Slosberg* court describes one legacy of the *Geiger* decision's silence on the term "malice" as an invitation to some observers to collapse the two modifiers of "wilful" and "malice" into a single legal construct. *Slosberg,* 225 B.R. at 20, n. 15. In fact, certain decisions outside the First Circuit have done just that; informed by both *Geiger* and the *Restatement (Second) of Torts,* § 8A (1964),

they have unified "wilful and malicious" under § 523(a)(6) to mean any act in which the actor desires to cause the injury or believes with substantial certainty that the injury will occur. *See Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 606 (5th Cir.1998) (holding that "[a]ggregating 'wilful and malicious' into a unitary concept might be inappropriate if the word they modified were 'act,'

concurring with post-*Geiger* case law holding that a showing of either intent to injure or proof of the actor's substantial certainty of the injurious outcome satisfies "wilful" under § 523(a)(6), *Slosberg* states that more is required; there must be proof of the debtor's malice. *Slosberg*, 225 B.R. at 19–20. After reviewing pre and post-*Geiger* First Circuit case law on the subject, *Slosberg* concludes that "malice" under § 523(a)(6) requires "a showing that the debtor's wilful, injurious conduct was undertaken without just cause or excuse." *Id.* at 21. According to the *Slosberg* court, this formulation leaves intact that portion of the First Circuit's *Printy* decision defining "malice," and it provides a meaningful standard for removing from § 523(a)(6)'s exception to discharge those injurious acts of the debtor "done for reasons that justify or excuse the act." *Id.; see Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997).

▮ This Court agrees. Accordingly, in order to exclude a debt from discharge under the "wilful and malicious" standard in § 523(a)(6), the creditor must show that: 1) the injuries complained of were the result of an act of the debtor done without justification or excuse; *and* 2) the debtor acted either intending to cause an injury or with substantial certainty that the injury would occur.

▮ Under Massachusetts law, an assault and battery is an intentional tort subjecting an actor to liability if:

[a] he *acts intending to cause a harmful or offensive contact* with the person of the other or a third person, or an imminent apprehension of such a contact, and [b] a harmful contact with the person of the other directly or indirectly results.

*Waters v. Blackshear*, 412 Mass. 589, 590, 591 N.E.2d 184, 185 (1992) *citing Restatement 2d of Torts*, § 13 (1965) (emphasis supplied). In addition, *Blackshear* held that "[a] result is intended if the act is done for the purpose of accomplishing the result or with knowledge that to a substantial certainty such a result will ensue." *Id.* at 590–91, 591 N.E.2d 184 *citing* W.L. Prosser & W.P. Keeton, *Torts*, § 9, at 41 (5th ed.1984). This definition parallels the § 523(a)(6) scienter requirements for "wilful" under *Geiger*. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974; *see also Pettey v. Belanger*, 232 B.R. 543, 546–47 (D.Mass.1999) (holding that the debtor's liability for sexual assault and battery in Massachusetts "falls squarely within the exception contained in § 523(a)(6)"). Moreover, it is a bedrock principle of Massachusetts case law that civil liability for an assault and battery will not lie if there is a showing of justification or cognizable excuse for the defendant's actions. *See Com. v. McKie*, 67 Mass. 61, 62–63, 1854 WL 6473 (1854) (holding that while criminal battery requires the government to prove beyond a reasonable doubt that there was no justification for the defendant's actions if the defendant raises such a defense, a defendant under a civil complaint for battery must affirmatively prove his averment of justification or excuse); *Blake v. Damon*, 103 Mass. 199,

but treatment of the phrase as a collective concept is sensible given the Supreme Court's emphasis on the fact that the word they modify is 'injury.' "); *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131, 136 (9th Cir. BAP 2000); (holding that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' . . . he has not

committed a 'wilful and malicious injury' as defined under § 523(a)(6)" (citing to *Restatement (Second) of Torts*, § 8A (1964) (internal citations omitted))); *Harry Ritchie's Jewelers, Inc. v. Chlebowski (In re Chlebowski)*, 246 B.R. 639, 644 (Bankr.D.Or.2000) (describing the effect of the *Miller* decision as creating "an integrated standard for determining whether an act is 'wilful and malicious' ").

1869 WL 5828 (1869) (holding that "an assault and battery is an unlawful and *unjustifiable* use of force and violence, however slight, upon the person of another.") (emphasis supplied); *Cooper v. McKenna,* 124 Mass. 284, 285, 1878 WL 10805 (1878) (holding that absent a defense of legitimate justification, liability for assault and batter will lie); *Jackson v. Old Colony St. Ry. Co.,* 206 Mass. 477, 488, 92 N.E. 725, 728 (1910) (setting aside a verdict for the defendant in an assault and battery action on the basis that the "substantial error of the trial arose from the assumption that under the circumstances verbal provocation was the legal equivalent of justification").

■■■ The State Court jury found that the Debtor committed the intentional tort of assault and battery upon Gomes. As the foregoing analysis indicates, a finding of liability for assault and battery under Massachusetts law satisfies the scienter requirements of § 523(a)(6). Further, the Verdict necessitated the subsidiary finding that there was no justification or excuse for the act. This Court is persuaded that the actions of the Debtor toward Gomes, established by the Verdict, "falls squarely within the exception [to discharge] contained in § 523(a)(6)." *Pettey,* 232 B.R. at 546–47.

### D. The Massachusetts Workers' Compensation Act

■■■ The Debtor further argues that the Act prohibits the Plaintiff's recovery of damages against him. *See supra* note 4. Gomes asserts that issue preclusion bars the Debtor from arguing in this Court that the Act prohibits recovery of damages for a worker's intentional tort against a co-worker in the course of their employment. "Plaintiff's Memorandum In Support Of His Motion For Summary Judgment," p. 5. This Court agrees.

The Debtor concedes that he twice raised in the State Court the issue of the Act's exclusive effect on claims for civil damages between co-workers for intentional torts: in a motion to dismiss; and in a motion for a directed verdict. "Transcript of the Hearing in the Adversary Proceeding," p. 3 (September 9, 2003). Issues regarding the exclusivity provisions of Mass. Gen. Laws ch. 152, § 24 are determined by the judge, justiciable by motion. *Anzalone v. Massachusetts Bay Transp. Authority,* 403 Mass. 119, 125, 526 N.E.2d 246, 249 (1988); *Foley v. Polaroid Corp.,* 381 Mass. 545, 548, 413 N.E.2d 711, 713 (1980); *Catalano v. First Essex Sav. Bank,* 37 Mass.App.Ct. 377, 381, 639 N.E.2d 1113, 1116 (1994). It is reasonable to infer that the Verdict and Judgment followed the State Court judge's consideration and denial of motions to invoke the exclusivity clause under the Act, M.G.L. c. 152, § 24. In Massachusetts, that level of adjudication is sufficient to provide preclusive effect for the issue underlying the motion in a subsequent forum. *Jarosz v. Palmer,* 49 Mass.App.Ct. 834, 836, 733 N.E.2d 164, 167 (2000) (holding that "an evidentiary hearing or jury trial is not necessary for an issue to have preclusive effect if it was properly raised in the prior proceeding, was submitted for determination, and was actually determined" (citing *Restatement (Second) of Judgments,* § 27, cmt. d)) *aff'd* 436 Mass. 526, 531, 766 N.E.2d 482, 488 (2002); *see also Keystone Shipping Co. v. New England Power Co.,* 109 F.3d 46, 52 (1st Cir.1997). Given the foregoing, this Court is persuaded that the issue of the Act's effect, if any, on Gomes' claims was fully adjudicated in the State Court, and the doctrine of issue preclusion prevents the Debtor from raising it again in this Court.

■■■ Furthermore, even were issue preclusion not to apply, this Court's juris-

diction to review the State Court decision would be precluded by the Rooker–Feldman doctrine:

> [t]he Rooker–Feldman doctrine prohibits federal district and circuit courts from reviewing state court judgments. Where a party did not actually present its federal claims in state court, Rooker–Feldman forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in a state court. *See [District of Columbia Court of Appeals v.] Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 [(1983)]. A federal claim is inextricably intertwined with the state-court claims "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *See Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir.1999).

*Sheehan v. Marr,* 207 F.3d 35, 39–40 (1st Cir.2000); *see In re Spookyworld, Inc. v. Town of Berlin, et al (In re Spookyworld, Inc.),* 266 B.R. 1, 13–14 (Bankr.D.Mass. 2001). Here, the Debtor urges this Court to find the Gomes claim dischargeable because, the Debtor says, the State Court erred in the application of the Act's exclusivity provisions. Under the Rooker–Feldman doctrine, this Court can not entertain that proposition.

## IV. *CONCLUSION*

Based upon the foregoing analysis, the Plaintiff's Motion for Summary Judgment will be allowed. An Order will issue in conformance herewith.

### *ORDER*

For the reasons set forth in a Memorandum of Decision of even date, this Court grants the Plaintiff's Motion for Summary Judgment.