*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0324p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JOHN J. DAVIS,

    *Plaintiff-Appellant,*

   *v.*

No. 06-4514

UNITED STATES OF AMERICA; UNITED STATES OF
AMERICA, BUREAU OF CITIZENSHIP AND
IMMIGRATION; SVETLANA A. DAVIS,

      *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 06-00734—James G. Carr, Chief District Judge.

Argued: July 27, 2007

Decided and Filed: August 16, 2007

Before: GILMAN and GRIFFIN, Circuit Judges; ACKERMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Guillermo J. Rojas, ASSISTANT
UNITED STATES ATTORNEY, Toledo, Ohio, Alan R. Kirshner, Toledo, Ohio, for Appellees.
**ON BRIEF:** Jeffrey P. Nunnari, Toledo, Ohio, for Appellant. Guillermo J. Rojas, ASSISTANT
UNITED STATES ATTORNEY, Toledo, Ohio, Alan R. Kirshner, Toledo, Ohio, for Appellees.

---

## OPINION

---

  RONALD LEE GILMAN, Circuit Judge. The district court dismissed John J. Davis's
complaint due to the lack of subject matter jurisdiction. Davis had sought a declaratory judgment
to determine the amount of financial support that he owes to his wife, from whom he is legally
separated, under an Affidavit of Support that the government required him to file on her behalf
when she immigrated to the United States from Ukraine. This suit came after a state court in Ohio
enforced the Affidavit by obligating Davis to pay his wife monthly support. But Davis contends that
his cause of action stems from an enforceable contract between himself and the government that

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting
by designation.

arises under federal law, despite the prior state-court ruling.  He thus argues that he has properly established subject matter jurisdiction.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In January of 2000, Davis executed an Immigration and Naturalization Service (INS) I-864 Affidavit of Support on behalf of Svetlana A. Davis and her two teenaged sons.  Svetlana at that time was a Ukrainian citizen whom Davis had recently married.  The Affidavit of Support acknowledges Davis's obligation to maintain his income at no less than 125 percent of the federal poverty level for a four-member household in order to support his wife and his stepsons.  Svetlana and her sons then joined Davis in the United States.   The marriage, however, was not a happy one.

Davis filed for divorce in 2001, and Svetlana counterfiled for a legal separation.  The Court of Common Pleas in Wood County, Ohio granted Svetlana's petition for a legal separation and awarded her $830 in monthly spousal support for a period of eight years, but declined to specifically enforce the Affidavit of Support.  She appealed to the Ohio Court of Appeals.  The Ohio appellate court remanded the matter back to the trial court with instructions to enforce the Affidavit of Support.  On remand, the trial court ordered Davis to support Svetlana in the amount of $900 per month for a period of ten years.  The court did not explain how it arrived at this amount.

Davis then filed suit against the United States, the U.S. Bureau of Citizen and Immigration Services (the BCIS, which was formerly the INS), and Svetlana in federal district court, seeking a "declar[ation of] the rights, duties, and responsibilities of the parties to, and third party beneficiaries of, the INS I-864 Affidavit of Support."  Specifically, he requested a clarification of "the level of support required by the INS I-864 Affidavit of Support."  Davis asserted that the Ohio trial court's support order erroneously reflected a "conclusion that *each* sponsored immigrant is entitled to support at an amount equivalent to 125% of the federal poverty guidelines for a household size of one (1)." (Emphasis added).  In contrast, Davis contends that the Affidavit of Support "only requires that each sponsored immigrant be maintained at a level equal to a pro rata share of 125% of the federal poverty guidelines for a household size of four (4)," because that was the household size used to determine his "eligibility to sponsor [Svetlana] and her children in accordance with the terms of the INS I-864 Affidavit of Support."

Davis's complaint sought clarification of what he described as the Affidavit's "ambiguous" and "less than clear" language "as to what [his] obligations are" to Svetlana and to each of her two sons.  He also requested clarification of whether the support obligation was fixed or would change as the federal poverty guidelines are updated.  Finally, Davis contended that "[a]llowing each sponsored immigrant on the INS I-864 Affidavit of Support to enforce the affidavit against Plaintiff based on individual household unit sizes of one (1) would result in Plaintiff becoming a public charge."

The BCIS moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming that Davis had failed to assert a valid federal cause of action.  In addition, the BCIS argued in its reply brief to the district court that the *Rooker-Feldman* doctrine applied because Davis's complaint was a "thinly veiled attempt to seek appellate review of the state court's final judgment."

The district court granted the BCIS's motion, dismissing Davis's complaint for the lack of subject matter jurisdiction and concluding that Davis lacked standing to sue the BCIS.  There was no citation to or discussion of the *Rooker-Feldman* doctrine.  The court stated, however, that because the Affidavit of Support had been the subject of a state-court ruling, Davis "cannot bring an action in district court to question the state court determination of the meaning of the affidavit of support."

One month later, the court issued a summary order stating that Davis's complaint as to "Suzanne [sic] Davis . . . is dismissed, with prejudice, on the basis of this Court's [previous] order . . . dismissing the case as to the United States of America."

Davis asserts on appeal that his complaint sought a declaration "of the meaning of the Affidavit [of Support] *vis-à-vis* his obligation to support his wife," and that "it also sought to displace any action which the Government or his wife's [two] sons may bring under their independent right to enforce the Affidavit." He then concedes that "the better practice would have been to name [his] wife's two sons as defendants in the declaratory judgment complaint," but contends that "their omission from the complaint is actually of no moment, as the Government still retains the right to bring an action against Davis to enforce the Affidavit in the circumstance that either or both sons receive public assistance."

## II.  ANALYSIS

### A.      Subject matter jurisdiction

We review de novo a district court's judgment dismissing a complaint for the lack of subject matter jurisdiction. *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). The factual findings that a district court makes in deciding the motion to dismiss will be accepted unless the findings are clearly erroneous. *Id.* Where a defendant moves to dismiss a complaint for the lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). In the present case, the district court dismissed Davis's complaint because neither of the statutes on which he based his claims grant him a cause of action.

A district court has subject matter jurisdiction over any civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A claim arises under federal law when the plaintiff's statement of his own cause of action shows that it is based upon federal laws or the federal Constitution." *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 548 (6th Cir. 2006) (brackets and quotation marks omitted). Davis asserts that his claims arise under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the provision of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) governing Affidavits of Support, 8 U.S.C. § 1183a(e)(1). Neither statute, however, supports this assertion.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." But § 2201 does not create an independent cause of action. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (holding that "Congress enlarged the range of remedies available in the federal courts [under the Act] but did not extend their jurisdiction"). A federal court accordingly "must have jurisdiction already under some other federal statute" before a plaintiff can "invok[e] the Act." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (quotation marks omitted).

The other statute on which Davis relies is IIRIRA. Specifically, he contends that the provision governing Affidavits of Support confers an implied cause of action on an immigrant's sponsoring citizen, such as himself. His reasoning is based upon an unconvincing syllogism. First, he argues that the Affidavit of Support is a contract between himself and the government. *See* 8 U.S.C. § 1183a(a)(1) ("No affidavit of support may be accepted . . . unless such affidavit is executed by a sponsor of the alien as a contract . . . ."). He next contends that this contract "arises under" and is governed by federal law. Finally, because he seeks to have the courts "interpret" this

contract "arising under federal law," he asserts that he has established subject matter jurisdiction over his request for a "declaration of [the Affidavit of Support's] meaning."

Section 1183a, however, clearly states that "[a]n action to enforce an affidavit of support . . . may be brought *against the sponsor* in any appropriate court . . . (1) by a sponsored alien, with respect to financial support; or (2) by the appropriate entity of the Federal [or State] Government . . . with respect to reimbursement." 8 U.S.C. § 1183a(e) (emphasis added). What is missing from the provision governing Affidavits of Support is any language giving *the sponsor* an enforcement right or any other cause of action. *See* 8 U.S.C. § 1183a.

Moreover, § 1183a authorizes exactly the kind of support order that the Ohio court issued in this case as a means of enforcing the Affidavit of Support. "Remedies available to enforce an affidavit of support . . . include an order for specific performance . . . and include corresponding remedies available under State law." 8 U.S.C. § 1183a(c). Specific performance of the Affidavit as ordered by the Ohio Court of Appeals is thus explicitly permitted under the statute. We therefore conclude that the district court did not err when it dismissed Davis's complaint for the lack of subject matter jurisdiction.

**B.     *Rooker-Feldman* doctrine**

The *Rooker-Feldman* doctrine provides another reason why the district court lacked subject matter jurisdiction over Davis's complaint. Under this doctrine, lower federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The genesis of the present case lies in the judgment by the Ohio Court of Common Pleas granting a decree of legal separation to Svetlana and entering an order of spousal support in her favor. This is, moreover, a domestic relations matter that does not rely on federal law. "[D]omestic relations are preeminently matters of state law." *Mansell v. Mansell*, 490 U.S. 581, 587 (1989).

To the extent that Davis argues that his complaint does not address an issue of domestic relations law, his argument fails. He contends that his complaint sought "an interpretation of the federal law" rather than "appellate review of the state court's final judgment." Despite his disclaimer, however, what he in fact sought was federal review of a state court's order enforcing the Affidavit of Support in his divorce case. His questions about the calculation of the support level are properly directed to the state court that ordered enforcement of the Affidavit of Support, not to a federal court. The remedy available to him from the state court's allegedly erroneous construction of the Affidavit of Support is an appeal within the state court system and ultimately to the United States Supreme Court, not a collateral attack in the lower federal courts. *See Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (affirming the district court's dismissal of the plaintiffs' ERISA claims on the basis of the *Rooker-Feldman* doctrine and res judicata). We therefore conclude that Davis's complaint is barred under the *Rooker-Feldman* doctrine.

**C.     Lack of standing**

The alternative basis for the district court's dismissal of Davis's complaint was that he could not establish standing as to his claim against the BCIS. Specifically, the district court concluded that the BCIS "cannot correct Davis's alleged injury by any § 2201 declaration because his alleged injury comes from a state court decision, not a [BCIS] decision." The court extended its reasoning to Svetlana in an order issued a month later. Davis disagrees, arguing generally that he "has met the standing requirements imposed by Art[icle] III [of the U.S. Constitution]." His particular concern, as stated in his complaint and again in his brief to this court, is that one or both of his wife's two

sons might at some future date seek to enforce the Affidavit of Support against him on their own behalf. This, he contends, "would result in Plaintiff becoming a public charge, as he would be left without any means of supporting himself."

Although Davis's concerns are legitimate, they are insufficient to establish standing in the present case. First, as the district court concluded, a favorable decision (presumably one declaring Davis's spousal support obligation to be lower than the amount ordered by the Ohio court) would not redress his injury. The BCIS cannot correct the injury because the BCIS did not cause it. Second, Davis's concerns about the possibility of future enforcement actions by his wife's sons or by the government on their behalf are too speculative to support standing.

Davis, simply put, cannot show that his concerns about his stepsons present a ripe controversy. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992). Davis admits that "the better practice would have been to name [his] wife's two sons as defendants in the declaratory judgment complaint," and suggests that he would amend the complaint to do just that if we were to order a remand. But even naming his wife's two sons would not overcome the ripeness hurdle because they are not the ones presently seeking to enforce the Affidavit of Support against him. We therefore conclude that the district court's alternative ground for dismissing Davis's complaint was not erroneous.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.