Steven Shea SCHWARTZ, Debtor.

Michal Saidon Schwartz,
Plaintiff–Appellant,

v.

Steven Shea Schwartz, Defendant–
Appellee.

BAP NO. MB 08–001.
Bankruptcy No. 06–13696 WCH.
Adversary No. 07–01016 WCH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Aug. 26, 2008.

Michal Saidon Schwartz, Boston, MA, pro se, on brief for Plaintiff–Appellant.

Jacob A. Esher, Esq., Boston, MA, on brief for Defendant–Appellee.

Before HAINES, VOTOLATO and TESTER, United States Bankruptcy Appellate Panel Judges.

### INTRODUCTION

TESTER, Bankruptcy Appellate Panel Judge.

The appellee, Steven Shea Schwartz ("Appellee"), is a Chapter 7 debtor. In

January, 2007, Michal Saidon Schwartz (the "Appellant") commenced an adversary proceeding against the Appellee seeking a determination that (1) the Appellee is liable to her under the terms of a Form I–864 "Affidavit of Support Under § 213A of the Immigration and Nationality Act," and (2) the alleged liability is nondischargeable as a domestic support obligation under the U.S. Bankruptcy Code. On October 18, 2007, the bankruptcy court entered an order dismissing the adversary complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.[1] The bankruptcy court also denied the Appellant's subsequent motions for reconsideration. The Appellant appealed. For the reasons discussed below, we **AFFIRM**.

### BACKGROUND

The relevant facts are not in dispute. The Appellant, who was a citizen of Israel, and the Appellee were married in 1996. In order to obtain permanent resident status for the Appellant, the Appellee filed a Form I–864 Affidavit of Support ("Affidavit of Support") with the Immigration and Naturalization Service.[2] The Affidavit of Support provided:

I submit this affidavit in consideration of the sponsored immigrant(s) not being found inadmissible to the United States under section 212(a)(4)(C) ... and to enable the sponsored immigrant(s) to overcome this ground of inadmissibility. I agree to provide the sponsored immigrant(s) whatever support is necessary to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines. I understand that my obligation will continue until my death or the sponsored immigrant(s) have become U.S. citizens,

can be credited with 40 quarters of work, depart the United States permanently, or die.

The Appellant was granted permanent resident status in June, 2001. None of the terminating conditions set forth in the Affidavit of Support have occurred.

On January 6, 2003, the Appellee filed for divorce from the Appellant in the Oklahoma District Court for Payne County ("Oklahoma State Court"). On December 18, 2003, the Oklahoma State Court issued a Decree of Divorce allocating the assets and liabilities of the parties. The Decree of Divorce specifically provided that:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that [Appellee's] obligation to support the [Appellant] shall terminate as of 12:00 noon on June 1, 2004, and from and after such time and date [Appellee] shall have no further obligation to provide any support whatsoever to [Appellant].

The Decree of Divorce did not specifically identify or address the Affidavit of Support or the status of the Appellee's obligations thereunder.

In June, 2004, the Appellant brought suit against the Appellee in the United States District Court for the Western District of Oklahoma seeking specific performance of the Affidavit of Support and damages in the amount of past due support. The Appellee moved to dismiss on the grounds that the Appellant had not yet received any means-tested public benefits, the Affidavit of Support was not a legally binding contract, and the Decree of Divorce terminated his obligations under the Affidavit of Support as of June 1, 2004. The district court denied the motion to

---

1. The bankruptcy court's decision is reported at *Schwartz v. Schwartz (In re Schwartz)*, 376 B.R. 364 (Bankr.D.Mass.2007).

2. The requirement for such an affidavit is set forth in 8 U.S.C. § 1182(a)(4)(c) and § 1183a.

dismiss, concluding that the Appellant could maintain the action regardless of whether she had obtained any benefits, the Affidavit of Support was an enforceable contract, and the Decree of Divorce did not automatically terminate the Appellee's obligations under the Affidavit of Support. Thereafter, the Appellant filed a motion for partial summary judgment. The Appellee did not file a response; instead, he filed his Chapter 7 petition in October, 2006. Due to the bankruptcy filing, the district court proceeding was "administratively closed" without prejudice to the rights of the parties to reopen the proceeding for good cause after termination of the bankruptcy proceeding.

In January, 2007, the Appellant commenced an adversary proceeding seeking a determination that the Appellee is liable to her pursuant to the Affidavit of Support, and that the alleged liability is nondischargeable as a domestic support obligation under the terms of the Bankruptcy Code.[3] The Appellant moved for partial summary judgment on the issue of the Appellee's liability under the Affidavit of Support, with damages to be determined at a later hearing.

The Appellee opposed the summary judgment motion and requested that judgment be entered in his favor. In his opposition, the Appellee argued that his support obligations to the Appellant terminated on June 1, 2004, in accordance with the terms of the Decree of Divorce, and that the Appellant's claims against him are barred by the doctrine of "claims preclusion" because they had been "conclusively adjudicated by the State Court." He also argued that any liability under the Affidavit of Support would not constitute a domestic support obligation under 11 U.S.C. § 101(14A) and, therefore, would be dischargeable.

The bankruptcy court held a hearing on August 15, 2007, and took the matter under advisement. On October 18, 2007, the bankruptcy court entered an order dismissing the adversary proceeding for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine ("Dismissal Order"). In its Memorandum Decision, the bankruptcy court stated:

> In the facts before me, it is clear that the Affidavit was submitted to the divorce court. The Decree of Divorce does not specify the reasoning behind its support order. The Plaintiff here seeks an order declaring the Affidavit to be a domestic support obligation and any claims arising thereunder to be nondischargeable. She is, in essence, seeking review of the Decree of Divorce. Under the *Rooker–Feldman* doctrine, I lack jurisdiction to review the Decree of Divorce.

Thereafter, the Appellant filed multiple motions, including a motion for reconsideration on October 29, 2007, and an amended motion for reconsideration on November 27, 2007. The Appellee opposed both motions. On December 5, 2007, the bankruptcy court issued an endorsement order denying the motion for reconsideration for failure to bring forth "newly discovered evidence." The bankruptcy court also issued an endorsement order denying the amended motion for reconsideration as "moot."

---

3. That same month, the Appellant also filed a motion with the Oklahoma State Court seeking to modify the Decree of Divorce "in accordance with the Affidavit." The state court docket reflects numerous continuances of a hearing on the motion, with the last entry setting the matter for hearing on November 15, 2007. There are no further docket entries regarding the status or disposition of that motion; however, the Appellant has suggested that the state court was awaiting the outcome of the adversary proceeding.

The Appellant filed a Notice of Appeal from "the judgment, order, or decree of the bankruptcy judge ... entered in this proceeding ... on the 18th day of October, 2007, and 5th of December, 2007." Because there are multiple orders dated December 5, 2007 (and "entered" on December 6, 2007), the Appellee questions which orders are properly part of this appeal. However, reading the Notice of Appeal in conjunction with the Appellant's Statement of Issues, we conclude that there are three orders to review on appeal: (1) the October 18, 2007 Dismissal Order; (2) the December 5, 2007 order denying the Appellant's motion for reconsideration; and (3) the December 5, 2007 order denying the Appellant's amended motion for reconsideration.

### JURISDICTION

■ As a preliminary matter, a bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted).

■ The bankruptcy court's order dismissing the Appellant's adversary complaint for lack of subject matter jurisdiction is a final order. *See Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42 (1st Cir. 2003) (reviewing district court's dismissal of case for lack of subject matter jurisdic-

tion under *Rooker–Feldman* doctrine). In addition, the orders denying the Appellant's motion to reconsider and amended motion to reconsider are also final, appealable orders. *See Eresian v. Koza (In re Koza )*, 375 B.R. 711, 717 (1st Cir. BAP 2007) (citations omitted); *Camacho v. Doral Fin. Corp. (In re Camacho )*, 361 B.R. 294, 298 (1st Cir. BAP 2007) (explaining that an order denying reconsideration is appealable if the underlying order was final and, if together, the order denying reconsideration and the underlying order end the litigation on the merits).

### STANDARD OF REVIEW

The Panel generally reviews findings of fact for clear error and conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). Generally, a court's order dismissing a complaint for lack of subject matter jurisdiction is subject to *de novo* review. *See Davis v. United States,* 499 F.3d 590, 593 (6th Cir.2007). A bankruptcy court's order denying a motion for reconsideration of a previous judgment is reviewed for abuse of discretion. *See Koza,* 375 B.R. at 717 (citing *Mariani–Giron v. Acevedo–Ruiz,* 945 F.2d 1, 3 (1st Cir.1991)). A bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor, or makes a serious mistake in weighing proper factors. *See id.* (citations omitted).

### DISCUSSION

#### I. The Affidavit of Support

Under the express terms of the Affidavit of Support, the Appellee, by signing the form, obligated himself to provide the Appellant "whatever support is necessary to

maintain [her] at an income that is at least 125 percent of the Federal poverty guidelines." Federal courts in many jurisdictions have held that a Form I–864 Affidavit of Support constitutes a legally binding and enforceable contract between a sponsor and the sponsored immigrant. *See Shumye v. Felleke*, 555 F.Supp.2d 1020 (N.D.Cal.2008); *Cheshire v. Cheshire*, 2006 WL 1208010, at *3 (M.D.Fla. May 4, 2006); *Stump v. Stump*, 2005 WL 1290658, at *6 (N.D.Ind. May 27, 2005); *Ainsworth v. Ainsworth*, 2004 WL 5219037, at *1 (M.D.La. May 27, 2004). In addition, the statute expressly permits the sponsored immigrant to bring an action for enforcement of the Affidavit of Support in any federal or state court. *See* 8 U.S.C. § 1183a(a)(1)(B).

A sponsor's obligation under the Affidavit of Support terminates only if one of five conditions is met: (1) the sponsor dies, (2) the sponsored immigrant dies, (3) the sponsored immigrant becomes a U.S. citizen, (4) the sponsored immigrant permanently departs the U.S., or (5) the sponsored immigrant is credited with 40 qualifying quarters of work. *See* 8 U.S.C. § 1183a(a)(2). Divorce is not listed as an event that terminates the sponsor's obligations under the Affidavit of Support. Consequently, federal courts have held that a spouse sponsoring an immigrant spouse can be financially liable under the Affidavit of Support even after divorce. *See Shumye v. Felleke*, 2008 WL 930781, at *2; *Cheshire*, 2006 WL 1208010, at *5; *Ainsworth*, 2004 WL 5219037, at *6.

It appears from the record before us that none of the terminating conditions set forth in the Affidavit of Support have occurred and the divorce itself did not automatically terminate the Appellee's obligations under the Affidavit of Support. *See id.* Accordingly, the Appellant argues that the Appellee remains obligated under the Affidavit of Support to support her despite the divorce. Moreover, the Appellant argues that the Affidavit of Support was not adjudicated as part of the divorce proceedings and, therefore, that the bankruptcy court erred in concluding that it lacked subject matter jurisdiction over her claims under the *Rooker–Feldman* doctrine.

The Appellee does not dispute that the Affidavit of Support was validly executed or that the Appellant, as the sponsored immigrant, had standing to enforce his support obligations. Rather, he argues that all support obligations, including his obligations under the Affidavit of Support, terminated on June 1, 2004, pursuant to the express terms of the Decree of Divorce. Moreover, the Appellee argues that because the Affidavit of Support was adjudicated as part of the divorce proceedings, the bankruptcy court correctly determined that it lacked subject matter jurisdiction over the Appellant's claims under the *Rooker–Feldman* doctrine.

## II. Subject Matter Jurisdiction

### A. Rooker–Feldman Doctrine

 The *Rooker–Feldman* doctrine[4] prohibits lower federal courts, including bankruptcy courts, from reviewing final

---

**4.** The doctrine is derived from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in

the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts. *See* 263 U.S. at 415–16, 44 S.Ct. 149. *Feldman* held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. *See* 460 U.S. at 486–87, 103 S.Ct. 1303.

state court judgments. *See New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61 (1st Cir.2002); *see also Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 403 (1st Cir. BAP 2004); *In re Zambre*, 306 B.R. 428 (Bankr. D.Mass.2004); *Gomes v. Limieux (In re Limieux)*, 306 B.R. 433, 442 (Bankr. D.Mass.2004); *Xytest Corp. v. Mitchell (In re Mitchell)*, 255 B.R. 97, 106 (Bankr. D.Mass.2000); *Halvorsen v. Mendez (In re Mendez)*, 246 B.R. 141, 145 (Bankr.D.P.R. 2000). Courts in the First Circuit interpreting the doctrine have held that it forecloses lower federal court jurisdiction where the issues in the case are "inextricably intertwined" with questions previously adjudicated by a state court. *See Mills*, 344 F.3d at 44 (citing *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir.1999)); *Sheehan v. Marr*, 207 F.3d 35, 39–40 (1st Cir.2000); *Mendez*, 246 B.R. at 145 (bankruptcy court may not exercise jurisdiction over dispute "if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment."). A federal claim is "inextricably intertwined" with state court claims "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Sheehan*, 207 F.3d at 40 (citing *Hill v. Town of Conway*, 193 F.3d at 39). Therefore, the *Rooker–Feldman* doctrine precludes a federal action if the relief requested in the federal action "would effectively reverse the state court decision or void its holding." *Mendez*, 246 B.R. at 146 (quoting *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811–12 (8th Cir.1998)).

█ Concerned that some lower courts were construing the doctrine too broadly and that it was beginning to evolve beyond the scope originally intended, the U.S. Supreme Court reemphasized the narrow scope of the *Rooker–Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (discussing the broad scope applied in *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 199–200 (2d Cir.1996)). In *Exxon Mobil*, the Supreme Court declared that the *Rooker–Feldman* doctrine "should be confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284, 125 S.Ct. 1517. The *Exxon Mobil* Court also held that the doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.*

█ Attempting to clarify the limited scope of the *Rooker–Feldman* doctrine after *Exxon Mobil*, the Second Circuit set forth a four-part test for federal courts to apply when determining whether *Rooker–Feldman* deprives them of subject matter jurisdiction. *See Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir.2005). *Hoblock* holds that *Rooker–Feldman* applies only if four conditions are met:

1. the federal-court plaintiff must have lost in state court;

2. the plaintiff must complain of injuries caused by a state-court judgment;

3. the plaintiff must invite district court review and rejection of that judgment; and

4. the state-court judgment must have been rendered before the district court proceedings commenced-i.e., *Rooker–Feldman* has no application to federal-

court suits proceeding in parallel with ongoing state-court litigation.

*Id.*

Moreover, *Hoblock* instructs that if the requirements outlined in *Exxon Mobil* are met, then the claim asserted in federal court is "inextricably intertwined" with the claim raised in state court; if, however, the *Exxon Mobil* requirements are not met, the plaintiff must be said to have raised an "independent claim" in federal court. *See McKithen v. Brown*, 481 F.3d 89, 96 n. 7 (2d Cir.2007) (interpreting *Hoblock* and *Exxon Mobil*).

## B. Rooker–Feldman and State Divorce Decrees

A number of courts have held that the *Rooker–Feldman* doctrine, as refined by *Exxon Mobil*, bars federal court review of final state divorce decrees. *See, e.g., Colassi v. Looper*, 2008 WL 2115160, at *3 (D.N.H. May 20, 2008) (dismissing plaintiff's challenge to the divorce decree for lack of subject matter jurisdiction under *Rooker–Feldman*); *Jackson v. Davidson*, 272 Fed.Appx. 722 (10th Cir.2008); *Davis v. United States*, 499 F.3d 590, 595 (6th Cir.2007); *Kwasnik v. LeBlon*, 228 Fed. Appx. 238, 242 (3d Cir.2007). In determining that it lacked subject matter jurisdiction in this case, the bankruptcy court relied primarily on the Sixth Circuit's decision in *Davis v. United States*, 499 F.3d 590.

In *Davis*, the husband executed an Form I–864 Affidavit of Support on behalf of his wife and her two teenaged sons. The husband filed for divorce a year later, and the wife counterfiled for legal separation. The trial court granted the petition for legal separation and awarded her $830 in monthly spousal support for eight years, but declined to specifically enforce the Affidavit of Support. She appealed and the state appellate court remanded the matter back to the trial court with instructions to enforce the Affidavit of Support. *Id.* at 592. On remand, the trial court ordered the husband to pay the wife $900 per month for a period of ten years, without explaining how it arrived at that amount. *Id.* The husband then filed suit in federal district court seeking to clarify his obligations under the Affidavit of Support. *Id.* at 592–93. The district court dismissed the case for lack of subject matter jurisdiction. *Id.* at 593.

On appeal, the husband argued that there was subject matter jurisdiction because his complaint sought an interpretation of federal law rather than domestic relations law. *Id.* at 595. The court of appeals disagreed, stating that the husband was, in fact, seeking "federal review of a state court's order enforcing the Affidavit of Support in his divorce case. His questions about the calculation of the support level are properly directed to the state court that ordered enforcement of the Affidavit of Support, not to a federal court." *Id.* In so holding, the court of appeals stated:

> Moreover, § 1183a authorizes exactly the kind of support order that the Ohio court issued in this case as a means of enforcing the Affidavit of Support. "Remedies available to enforce an affidavit of support . . . include an order for specific performance . . . and include corresponding remedies available under State law." 8 U.S.C. § 1183a(c). Specific performance of the Affidavit as ordered by the Ohio Court of Appeals is thus explicitly permitted under the statute. We therefore conclude that the district court did not err when it dismissed Davis's complaint for the lack of subject matter jurisdiction.

*Id.* at 594–95.

██ Relying on *Davis*, the bankruptcy court concluded that it lacked subject mat-

ter jurisdiction over the Appellant's claims under *Rooker–Feldman* since it was "clear that the Affidavit was submitted to the divorce court." On the record before us, it is unclear whether the Affidavit was submitted in the divorce proceedings or whether the Oklahoma State Court intended to encompass the Appellant's claims under the Affidavit of Support when it adjudicated the assets and liabilities of the parties in the Decree of Divorce. The Oklahoma State Court did not set forth the rationale behind its decision in the Decree of Divorce, and the parties dispute whether the Affidavit of Support was submitted as evidence. But if, in fact, the Affidavit of Support was submitted in the divorce proceedings, the bankruptcy court lacked subject matter jurisdiction over the Appellant's claims under the *Rooker–Feldman* doctrine. Moreover, even if the Appellant did not submit the Affidavit of Support in the divorce proceedings, the end result is the same because the Appellant's claims were still barred by the doctrine of res judicata.

### III. Res Judicata

The doctrine of res judicata prohibits all parties and their privies from relitigating issues which were raised or could have been raised in a previous action, once a court has entered a final judgment on the merits in the previous action. *See FDIC v. Shearson–Amer. Express, Inc.,* 996 F.2d 493, 497 (1st Cir.1993) (citations omitted). The res judicata doctrine is generally used to refer to claim preclusion. *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30–31 (1st Cir.1994) (citing *Dennis v. Rhode Island Hosp. Trust Nat'l Bank,* 744 F.2d 893, 898 (1st Cir.1984)). The essential elements of res judicata are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in

both suits. *Id.* (citing *Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir.1992)). Once these elements are established, the parties are barred not only from relitigating previously disputed matters, but also from introducing any related matters that *could have been offered* in the original action. *See id.* (citing *Dennis,* 744 F.2d at 898).

All of the elements of res judicata are present here. First, the Decree of Divorce is a final state court judgment in a proceeding between the Appellant and Appellee. Under Oklahoma law, "the adjudication of any issue" in a divorce case is "enforceable when pronounced by the court," *see* Okla. Stat. tit. 12, § 696.2(E), and a divorce is final at the date of rendition where there has not been an appeal from the status determination of divorce. *See Whitmire v. Whitmire,* 78 P.3d 556 (Okla.Civ.App.2003) (citing Okla. Stat. tit. 43, § 127 (1991)). In this case, neither party appealed the Decree of Divorce in this case, and, therefore, the Decree of Divorce is a final state court judgment.

In addition, there is an identity of the cause of action in both proceedings. The divorce proceedings clearly involved the Appellant's claims for support from the Appellee. As *Davis* demonstrates, a party's support claims under an Affidavit of Support can be adjudicated as part of a party's claims for support in a divorce proceeding. Although it is unclear whether the Appellant actually submitted the Affidavit of Support in the divorce proceedings, she clearly *could have* done so. Therefore, since the Appellant could have pursued her support claims under the Affidavit of Support in the divorce proceedings, she is barred from pursuing those claims in the Appellee's bankruptcy case under the doctrine of res judicata.

## IV. Motions for Reconsideration

Although the Appellant asked the bankruptcy court for reconsideration in her motions, it is a well-settled policy in this circuit that a motion which asks the trial court to a modify its earlier disposition of a case is properly treated as a motion to alter or amend the judgment under Rule 59(e) (made applicable by Fed. R. Bankr.P. 9023), or as a motion for relief from judgment under Fed.R.Civ.P. 60 (made applicable by Fed. R. Bankr.P. 9024). *See Aguiar v. Interbay Funding, LLC (In re Aguiar)*, 311 B.R. 129, 135 n. 9 (1st Cir. BAP 2004) (citations omitted). Because the Appellant's motion for reconsideration was filed within ten days after entry of the bankruptcy court's Dismissal Order, it was properly treated as a motion for relief from judgment under Rule 59(e).[5] *See Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 24 (1st Cir.1987); *see also Aybar v. Crispin–Reyes*, 118 F.3d 10, 14 n. 3 (1st Cir.1997) (regardless of how it is characterized, post-judgment motion made within ten days of entry of judgment that questions correctness of judgment is properly construed under Rule 59(e)).

To meet the threshold requirements of a successful Rule 59(e) motion, the motion "must demonstrate the reason why the court should reconsider its prior decision and must set forth facts or law of a strongly convincing nature to induce the court to reverse its earlier decision." *Lopez Jimenez v. Pabon Rodriguez (In re Pabon Rodriguez)*, 233 B.R. 212, 219 (Bankr.D.P.R.1999), *aff'd*, 17 Fed.Appx. 5 (1st Cir.2001). In order to be successful on a Rule 59(e) motion, the moving party must establish a manifest error of law or fact or must present newly discovered evidence. *Id.; see also Landrau–Romero v. Banco Popular De P.R.*, 212 F.3d 607, 612 (1st Cir.2000). The moving party cannot use a Rule 59(e) motion to cure its procedural defects or to offer new evidence or raise arguments that could and should have been presented originally to the court. *See Rodriguez*, 233 B.R. at 219. Rule 59(e) motions are generally denied because of the narrow purpose for which they are intended. *Id.* at 220.

As noted above, the Appellant was barred from pursuing her claims under the Affidavit of Support pursuant to either the *Rooker–Feldman* doctrine or the doctrine of res judicata. Therefore, the bankruptcy court did not make a manifest error of law when it dismissed the adversary complaint. Moreover, the Appellant simply rehashed prior arguments and did not offer any "newly discovered evidence" warranting the relief requested in her motions for reconsideration. Therefore, we conclude that the bankruptcy court did not abuse its discretion in denying those motions.

## *CONCLUSION*

For the reasons set forth above, we **AFFIRM** the bankruptcy court's order dismissing the adversary complaint, and the orders denying the Appellant's motion for reconsideration and the amended motion for reconsideration.

---

5. To be considered under Rule 59(e), the motion for reconsideration must be filed within ten days of the order appealed from or, if (as here) the tenth day is a weekend day or federal holiday, then on the next day that is not a weekend day or federal holiday. *See* Fed. R. Bankr.P. 9006(a).